

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KELLY & FRANKIE COSTANZA, ET AL.  CIVIL ACTION

VERSUS  NO. 02-1492

ALLSTATE INSURANCE CO., ET AL.  SECTION "K" (4)

## ORDER AND REASONS

Before this Court is defendant Allstate Insurance Company's Motion for Summary Judgment of plaintiff's claims (Rec. Doc. 65). For the following reasons the Motion is **DENIED**.

**Factual Background**

Plaintiffs purchased a home on or about July 14, 1995 in Mandeville, Louisiana. After moving in plaintiffs experienced minor water intrusion problems in their dining room when water came in through a light socket and the front window. Repairs were eventually made by the home's builder and covered under plaintiffs' home warranty. No further problems existed until 2001 when, as a result of Tropical Storm Allison, the home flooded, creating a need for extensive repairs. These repairs revealed major structural damage to the home, including a defective

1

___ Fee____
___ Process____
_X_ Dktd____
___ CtRmDep____
___ Doc. No____

exterior stucco system. Water damage had also occurred in the interior walls of the home, which in turn caused extensive stachybotrys mold contamination throughout the dwelling, rendering it uninhabitable. On the advice of an Allstate Home insurance adjuster, plaintiffs vacated their home, despite the fact that their insurer, Allstate Home, had denied their homeowner's claim. The plaintiffs subsequently filed a lawsuit against various involved parties which contends, *inter alia*, that the extensive mold growth which rendered the home uninhabitable was only partially caused by Tropical Storm Allison. Instead they allege that the majority of the mold created was the result of a long-term and previously unknown water leakage caused by their home's defective exterior. Plaintiffs contend that Allstate is responsible for the resulting damages under both plaintiffs homeowner's policy and a separate flood policy, both of which Allstate issued. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Allstate has now moved for summary judgment of plaintiffs' claims against them, arguing that the damages sought by plaintiffs do not arise from a covered cause of loss, are not "sudden and accidental," and are prescribed.[1]

**Standard for Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment must demonstrate an absence of any genuine issue of

---

[1] Allstate Insurance Company has been sued by plaintiffs in its capacity as both flood insurer and homeowner's insurer. *See* Rec. Doc. 1, Compl. p. 2. The instant motion has been filed by Allstate only in its capacity as homeowner's insurer. *See* Rec. Doc. 65, p.1.

material fact. *Id.*; *see also Anderson v. Liberty Lobby, Inc.*, 477 US 242, 242-57 (1986). While the nonmovant must provide more than mere conclusory allegations to defeat summary judgment, the court should decide every reasonable inference in favor of the party opposing the motion. *Burditt v. West American Ins. Co.*, 86 F.3d 475, 476 (5th Cir. 1996)(citing *John v. State of Louisiana*, 757 F. 2d 698 (5th Cir. 1985)).

**Analysis**

Allstate, in moving for summary judgment, makes a three-fold argument in support of its position. First, Allstate argues that the damages sought by plaintiffs are not covered by their homeowners policy because the policy excludes damage due to rising water due to flood, as well as water on or below the surface of the ground. Second, Allstate claims that even if the damage claimed by plaintiffs is not a result of flood waters, and thus could potentially be covered under the policy's "sudden and accidental direct loss to the home" clause, in this case the clause is inapplicable because the water leakage into the dining room walls is neither sudden nor accidental as plaintiffs have been aware of water intrusion in the home since 1996. Finally Allstate avers that plaintiffs claims have prescribed as plaintiffs failed to file suit within one year after the inception of the damage, since water intrusion has been going on since 1996 and Allstate was not notified of the problem by the plaintiffs until January 2000.

In response plaintiffs argue that several genuine issues of material fact remain. While plaintiffs admit that some of the damage is related to Tropical Storm Allison and thus is not covered under their homeowner's policy, they argue the fact finder should determine whether any damages are covered. Plaintiffs also point out that even if the damage in 2001 was caused *solely* by flood waters (and as such excluded from coverage under the Allstate Home policy), their

Allstate Flood policy would then presumably cover the loss. Notably Allstate Flood has also denied plaintiffs' flood claim, and as such, plaintiffs argue that Allstate is using the two separate policies against plaintiffs to avoid paying out at all.

Allstate's second argument, namely that even if the damage claimed by plaintiffs was not a result of flood waters it would still not be covered under plaintiffs homeowners clause because the water leakage into the dining room walls was neither "sudden" nor "accidental," is also disputed. Plaintiffs dispute that they have known of the water damage and mold contamination to their home since 1996. Plaintiffs argue that they were led to believe that the water they noticed coming from the light socket and front window in the dining room in 1996 were minor problems that were remedied by the builder and their home warranty corporation. At that time the warranty company suggested only that plaintiffs repair the gutters and landscaping around the home. The plaintiffs state that at the time those repairs were made they had yet to see any water leaking from their roof or have any problems with the roof itself, and that they only learned of the homes structural deficiencies in 2001 after Tropical Storm Allison flooded the residence. Plaintiffs argue that an undiscovered leak can be considered "sudden" or "accidental" under the policy, despite Allstate's protestations to the contrary. Simply because plaintiffs were unaware of the hole in their roof and did not discover it for many years does not make the loss suffered any less "sudden" or "accidental.

As to prescription, plaintiffs argue that the statute of limitations did not begin to run until 2001, when plaintiffs were notified by a company hired to do repairs as a result of damage caused by the Tropical Storm Allison that water and mold damage in the walls of their home existed. Alternatively, plaintiffs argue that the long-term water infiltration and mold growth in

their home qualifies as a continuing tort, and thus prescription should run from when particular wrongful conduct ceased. *See Henry v. Cisco Systems, Inc.*, 106 F.3d 235 (5th Cir. 2004). Finally, plaintiffs point out that in this case prescription itself hinges on a question of fact, namely whether and when plaintiffs should have known that the water coming through their floor was actually coming from their roof and was not a result of poor drainage. Plaintiffs argue that the finder of fact at trial must determine what plaintiffs did or did not know or should or should not have done in such a situation.

    The Court finds that Allstate is not entitled to summary judgment at this stage of the proceedings as multiple issues of material fact remain. Firstly, based on the evidence submitted to the Court there is a material question of fact as to what extent the damage claimed by the plaintiffs is excluded under the homeowner's policy as flood water damage. Furthermore, the Court is unwilling to adopt Allstate's interpretation of the terms "sudden" and "accidental," as the Court finds that whether water infiltration and mold growth that remains invisible to a homeowner is considered "sudden" or "accidental" must be left for trial. The Court notes that under Louisiana law, "the interpretation of the policy most favorable to the insured must be adopted," *Creole Explorations, Inc. v. Underwriters at Lloyds*, 161 So.2d 768 (1964), and that the burden is on the insurer to prove that an exclusion applies. *See Borden, Inc. v. Howard Trucking Co., Inc.*, 372 So.2d 242 (La.App. 1st Cir. 1979). It is the Court's opinion that Allstate fails to meet this burden at the present time. While the homeowner's policy states that it will cover "sudden and accidental direct physical loss to the property," (Rec. doc. 65, Exh. "1," Allstate Home Policy, p. 7), the Court can find no applicable exclusion of coverage for the

seepage or leakage that Plaintiff claims came from a hole in their roof.[2] Finally, the Court notes that like *Primm v. State Farm Fire & Casualty Co.*, 426 So.2d 356 (La.App. 2nd Cir. 1983), the policy at issue in this case seemingly covers water damage caused by leakage or seepage which occurs "suddenly and accidentally." The very term "sudden seepage" may be inherently contradictory, *id.* at 360, and while it is "difficult to imagine an abrupt seepage from an unknown cause," the Court finds that any ambiguity in the Allstate policy must inure to the benefit of plaintiffs. *Id.*

As to prescription, because the parties dispute the events which toll the statute of limitations and offer conflicting evidence as to when plaintiffs should have been aware of their home's structural deficiencies, the Court finds summary judgment on this ground to also be inappropriate at this time. *See Burditt*, 86 F. 3d at 477-78. Taking every reasonable inference in favor of plaintiffs, the Court finds that whether plaintiffs previously had knowledge of water infiltration and mold in the interior walls of their home, as well as what they should have done in such a situation, is itself a question of fact best left to the fact finder at trial.

---

[2] Exclusions do exist for losses attributable to, *inter alia*, flood, backed-up sewers or drains, overflowing sump pumps, and subsurface water. *See* Rec. doc. 65, Exh. "1," Allstate Home Policy, p. 8, Exclusions 1-4; *see also* p.10, Exclusion 18 (excluding continuous or repeated seepage or leakage of water from plumbing and appliances).

Accordingly,

**IT IS ORDERED** that Allstate Insurance Company's Motion for Summary Judgment be **DENIED**.

Houma, Louisiana, this 26th day of October, 2005.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE